NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHEPITO HILTON,

      Plaintiff,                     Civil Action No. 04-6420(SDW)

      v.

CHRISTINE TODD WHITMAN,     **OPINION**
ET AL.,

      Defendants.              December 15, 2008

**WIGENTON, District Judge**

    This matter comes before the Court on a Rule 60(b)(6) Motion for Reconsideration filed by Plaintiff Chepito Hilton.[1]  Also before the Court is a Rule 12(c) Motion to Dismiss the Second Amended Complaint or, in the Alternative, a Rule 56 Motion for Summary Judgment filed by Defendants Carl Williams and Jeffrey Kronenfeld.[2]  These motions are decided without oral argument pursuant to Rule 78.  For the reasons stated below, the Motion for Reconsideration is denied and the Motion for Summary Judgment is granted.

## I. Factual Background

    On September 22, 1995, Chepito Hilton ("Hilton"), an African American male, was a passenger in a vehicle driven by Glenn Robinson ("Robinson") also an African-American male, traveling on Route 80 in Morris County, New Jersey.  (Defendants' Statement of Undisputed Material Facts dated Mar. 3, 2008 ("Defs.' Facts") at ¶ 1;

---

[1] This Motion appears at docket entry # 69.
[2] This Motion appears at docket entry # 70.

Rudow Declaration dated Mar. 3, 2008  ("Rudow Dec.") at Ex. A, Deposition of Chepito Hilton dated Jan. 24, 2007 ("Hilton Dep.") at 21:1; 50:22-25; 51:1-23; 96:3-15.)  While patrolling Route 80, New Jersey State Trooper Jeffrey Kronenfeld ("Trooper Kronenfeld") pulled the vehicle over.  (Defs.' Facts at ¶ 9; Hilton Dep. at 64:2-12.)  Trooper Kronenfeld asked for Robinson's driver's license and registration.  (Defs.' Facts at ¶ 15; Hilton Dep. at 67:11-25.)  Trooper Kronenfeld ordered Robinson to step outside the vehicle, and Robinson complied.  (Defs.' Facts at ¶ 16; Hilton Dep. at 68:4-6, 11-13, 21-24.)  Hilton observed Trooper Kronenfeld frisking and handcuffing Robinson through the rearview mirror.  (Defs.' Facts at ¶¶ 16-17; Hilton Dep. at 68:4-24, 69:11-13.)  Thereafter, Trooper Kronenfeld ordered Hilton to step outside the vehicle, and Hilton complied.  (Defs.' Facts at ¶ 18; Hilton Dep. at 69:20-25.)  Trooper Kronenfeld then frisked Hilton.  (Defs.' Facts at ¶ 18; Hilton Dep. at 69:20-25.)

Suddenly, an unmarked vehicle driven by an off-duty police officer pulled up to where the four men were standing at a fast rate of speed.  (Defs.' Facts at ¶ 19; Hilton Dep. at 72:5-25.)  Trooper Kronenfeld ran back to his vehicle and ordered Hilton to get down on the ground.  (Defs.' Facts at ¶ 20; Hilton Dep. at 73:14-17.)  Hilton testified that he put his hands in the air, ran to his vehicle, dove into the front of his vehicle and pulled his right leg over the center console.  (Defs.' Facts at ¶¶ 22-23; Hilton Dep. at 74:1-22, 75:1-9, 77:14-15, 80:12-16.)   Hilton also testified that he saw Trooper Kronenfeld standing at the passenger side door with his weapon drawn as Hilton pulled his leg over the gear shift, put the gear shift into drive and hit the gas.  (Defs.' Facts at ¶ 24; Hilton Dep. at 80:12-16, 82:22-25.)  Then, Trooper Kronenfeld shot Hilton, and Hilton drove

away.  (Defs.' Facts at ¶¶ 24-26; Hilton Dep. at 82:22-25, 89:10-16, 90:4-6.)

Four days later, Hilton voluntarily surrendered to the New Jersey State Police. (Defs.' Facts at ¶¶ 25-26; Hilton Dep. at 94:2-24, 97:19-22, 100:6-21.)  Hilton was charged with various criminal offenses, including possession of a controlled dangerous substance, stemming from the September 22, 1995 incident.  (Defs.' Facts at ¶ 26; Hilton Dep. at 101:6-11.)  After spending a week in jail, Hilton was released on bail.  (Defs.' Facts at ¶ 28; Hilton Dep. at 102:7-23, 103:18-22.)

On June 3, 1996, Hilton was present when his attorney argued a Motion to Suppress the evidence seized as a result of the allegedly unlawful stop.  (Defs.' Facts at ¶¶ 29-30; Hilton Dep. at 104:9-105:9; Rudow Dec. at Ex. B, Transcript of Hearing before the Honorable Catherine M. Langlois, J.S.C., dated Jun. 3, 1996.)  His attorney claimed that Hilton had been subjected to selective enforcement of the motor vehicle laws because of his race.  (Defs.' Facts at ¶¶ 29-30; Rudow Dec. at Ex. B, Transcript of Hearing before the Honorable Catherine M. Langlois, J.S.C., dated Jun. 3, 1996.)  The motion relied in part on *State v. Soto*, 324 N.J. Super. 66, 84 (Law Div. 1996), in which the Court found that the New Jersey State Police endorsed a policy of racial profiling. (Defs.' Facts at ¶ 30; Rudow Dec. at Ex. B.)  The Honorable Catherine M. Langlois, J.S.C., denied the Motion to Suppress.  (Defs.' Facts at ¶ 31; Hilton Dep. at 104:24-105:3.)  On October 8, 1996, Hilton pleaded guilty to the charge of possession with intent to distribute a controlled dangerous substance.  (Defs.' Facts at ¶ 38; Hilton Dep. at 106:18-21, 115:17-116:2.)  Hilton testified that he entered a guilty plea because he was guilty of the crime.  (Defs.' Facts at ¶ 39; Hilton Dep. at 107:17-24.)

3

On April 29, 1999, the Attorney General of the State of New Jersey issued the "Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling," which revealed that the New Jersey State Police engaged in unlawful racial profiling.  (Plaintiff's Statement of Disputed and Undisputed Material Facts dated Apr. 8, 2008 at ¶ 14; Levine Certification dated Apr. 2, 2008 at Ex. 14.)

On December 29, 2003, upon motion by the State of New Jersey, the Honorable Salem Vincent Ahto, J.S.C., executed an order dismissing Hilton's indictment and vacating his conviction due to colorable issues of racial profiling.  (Rudow Certification dated Aug. 8, 2006 ("Rudow Cert.") at Ex. D, Dec. 29, 2003 Order entered by the Honorable Salem Vincent Ahto; Rudow Cert., Ex. B, Heinzel Affidavit dated Apr. 19, 2002.)  Deputy Attorney General of the State of New Jersey Paul Heinzel declared "[r]ather than litigating the issues of selective enforcement, whether generally or specifically, in the interests of justice the State hereby moves to vacate the judgments of conviction . . . and to dismiss the indictments with prejudice."  (Rudow Cert., Ex. B.) During the hearing conducted on November 14, 2003, Judge Ahto stated that he was "not ruling . . . on the merits of anything."  (Rudow Cert., Ex. C, Transcript of Hearing before Judge Ahto dated Nov. 14, 2003.)

On December 29, 2004, Hilton filed a Complaint before this Court alleging, among other things, that Trooper Kronenfeld violated his civil rights when he stopped the vehicle simply because Hilton is African American.  Hilton alleges that he was deprived of his civil rights because Trooper Kronenfeld and Former Superintendent of the New Jersey State Police Colonel Carl Williams (collectively, "Defendants") conspired to

4

conceal the existence of racial profiling.  Hilton alleges that the criminal prosecution that ensued as a result of the unlawful traffic stop was unconstitutional.

In the four years since the Complaint was filed, various claims and defendants have been dismissed.  By January 29, 2008 Order, this Court dismissed Hilton's Fourth and Fourteenth Amendment claims as well as his claims for malicious prosecution under 42 U.S.C. § 1983 and New Jersey law.  Hilton moved for reconsideration of these claims. With leave of court, Defendants moved to dismiss Hilton's remaining claims under §§ 1985, 1986 and 1988.  Consequently, the claims that will be addressed in this Opinion are: (1) 42 U.S.C. § 1983 claims for false arrest, false imprisonment, illegal search and seizure, and excessive force in violation of the Fourth Amendment to the United States Constitution; (2) a 42 U.S.C. § 1983 claim for selective enforcement based on racial profiling in violation of the Fourteenth Amendment to the United States Constitution; (3) a 42 U.S.C. § 1985 claim for race-based conspiracy to deprive Hilton of equal protection of the law; (4) a 42 U.S.C. § 1986 claim for failing to prevent the race-based conspiracy; (5) a 42 U.S.C. § 1988 claim for attorney's fees and costs; and (6) malicious prosecution claims under 42 U.S.C. § 1983 and New Jersey law.  Defendants seek dismissal of all claims.

## II.  **Jurisdiction/Venue**

This Court has jurisdiction over the 42 U.S.C. §§ 1983, 1985, 1986 and 1988 claims pursuant to 28 U.S.C. §§ 1331 and 1343.  Pursuant to 28 U.S.C. § 1367, the Court exercises pendent jurisdiction over the malicious prosecution claim asserted under New Jersey common law.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

because the events that give rise to Hilton's claims occurred in New Jersey.

## III.  <u>Discussion</u>

### A.  **Rule 60(b)(6) Motion for Reconsideration**

On motion, a court may relieve a party from a final judgment, order or proceeding for any reason justifying relief.  Fed. R. Civ. P. 60(b)(6).  A Rule 60(b) motion for reconsideration is a vehicle to correct manifest errors of law, present newly discovered evidence or advise of an intervening change in the law.  *North River Ins., Co. v. CIGNA Reins, Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (citing *Natural Res. Def. Council v. E.P.A.*, 705 F. Supp. 698, 702 (D.D.C. 1989)).  Such motion may not be used to relitigate old issues, advance new theories or secure a rehearing on the merits.  *Auerbach v. Kantor-Curley Ped. Assocs.*, No. 01-854, 2004 U.S. Dist. LEXIS 26133, at *2 (E.D. Pa. Dec. 30, 2004).  Rather, the movant must raise controlling facts or dispositive case law overlooked by the court in rendering a decision.  *Ciba-Geigy Corp. v. Alza Corp.*, No. 91-5286, 1993 U.S. Dist. LEXIS 3971, at *3 (D.N.J. Mar. 25, 1993).  A motion for reconsideration should be granted only in extraordinary circumstances.  *Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987) (citing *Kock v. Gov't of the Virgin Islands*, 811 F.2d 240, 246 (3d Cir. 1987)).

### B.  **Rule 56 Summary Judgment**

Defendants moved to dismiss the Second Amended Complaint ("Sec. Am. Compl.") pursuant to Rule 12(c) or, in the alternative, for summary judgment pursuant to Rule 56.  Because both parties rely on facts not contained in the pleadings, the motion will be considered as one for summary judgment.  *See* Fed. R. Civ. P. 12(d).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The need of the non-movant to conduct further discovery does not preclude summary judgment unless the non-movant demonstrates how the additional discovery would preclude summary judgment. *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

Here, because there is no genuine issue of material fact for trial, summary

7

judgment is proper.

### C.  42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code "creates a species of tort liability"[3] and subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.   To establish that a defendant violated a right secured by the Constitution or laws of the United States, a plaintiff must demonstrate that the defendant deprived him of such right as charged in the complaint.   *Salerno v. O'Rourke*, 555 F. Supp. 750, 757 (D.N.J. 1983).   A plaintiff must "identify the exact contours of the underlying right said to have been violated."   *Downey v. Coalition Against Rape and Abuse, Inc.*, 143 F. Supp. 2d 423, 437 (D.N.J. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).   "By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."   *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

---

[3] *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)).

> describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.  False arrest, false imprisonment, illegal search and seizure, and

the use of excessive force are prohibited by the Fourth Amendment.  *See Wallace v. Kato*,

127 S. Ct. 1091, 1100 (2007) (noting that a claim for false arrest is subsumed by a claim

for false imprisonment); *Carroll v. United States*, 267 U.S. 132, 147 (1925); *Graham v.

Connor*, 490 U.S. 386, 388 (1989).

> The Fourteenth Amendment to the U.S. Constitution provides, in pertinent part:

>> No State shall make or enforce any law which shall abridge
>> the privileges or immunities of citizens of the United
>> States; nor shall any State deprive any person of life,
>> liberty, or property, without due process of law; nor deny to
>> any person within its jurisdiction the equal protection of the
>> laws.

U.S. Const. amend. XIV, § 1.  Selective enforcement of the law based on race is

prohibited by the Equal Protection Clause of the Fourteenth Amendment.  *Whren v.

United States*, 517 U.S. 806, 813 (1996).

### D.  Accrual and Statute of Limitations for § 1983 Claims

> Federal law determines the accrual date of § 1983 claims.  *Wallace*, 127 S. Ct. at

1095.  Such accrual occurs "when the plaintiff has a complete and present cause of

action, that is, when the plaintiff can file suit and obtain relief."  *Wallace*, 127 S. Ct. at

1095 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.

of Cal.*, 522 U.S. 192, 201 (1997) (internal quotations and citations omitted)).

>> "Under the traditional rule of accrual . . . the tort cause of
>> action accrues, and the statute of limitations commences to
>> run, when the wrongful act or omission results in damages.
>> The cause of action accrues even though the full extent of

> the injury is not then known or predictable." Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Wallace*, 127 S. Ct. at 1097 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp 526-527 (1991) (footnote omitted).

The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that forms the basis of its § 1983 claim. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)); *see Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury . . . not upon awareness that this injury constitutes a legal wrong.") (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988)).

Section 1983 claims are "governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006) (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989)). Thus, a § 1983 claim arising in New Jersey has a two-year statute of limitations. *O'Connor*, 440 F.3d at 126-127 (citing *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987)); *see* N.J. Stat. Ann. § 2A:14-2.

**E. Tolling for § 1983 Claims**

Federal courts rely on state law to determine whether a statute of limitations should be tolled. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). Under New Jersey law, a

statute of limitations can be tolled for statutory or equitable bases.  Bases for statutory tolling are: (1) minority status; (2) insanity; or (3) non-residency of persons liable.  N.J. Stat. Ann. §§ 2A:14-21, 2A:14-22 (2007).  Bases for equitable tolling include when: (1) a claimant has been induced or tricked by an adversary's misconduct into allowing the filing deadline to pass; (2) a claimant has, in some extraordinary way, been prevented from asserting rights; or (3) a claimant has timely asserted rights in a defective pleading or in the wrong forum.  *Freeman v. N.J.*, 347 N.J. Super. 11, 31 (App. Div. 2002) (citations omitted).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  *Id.* at 31 (citing *U.S. v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

When state tolling rules conflict with federal law or policy, federal courts can apply federal law to equitably toll a statute of limitations.  *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000).  The bases for equitable tolling under federal law are similar to those under New Jersey law, namely:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

*Lake v. Arnold*, 232 F.3d at 370 n.9 (citing *Oshiver*, 38 F.3d at 1387).

## F.  *Heck* and *Wallace* on § 1983 Claims

In *Heck*, the Supreme Court held that a § 1983 claim is not cognizable if success

in such claim would "necessarily imply the invalidity" of an underlying conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). This is commonly referred to as the "*Heck* bar," and it prevents a plaintiff in a § 1983 civil action from pursuing a collateral attack on the validity of his conviction or sentence.[4] *Heck*, 512 U.S. at 484-86. As such, if the district court determines that the § 1983 claim triggers the *Heck* bar, the § 1983 claim must be dismissed unless and until plaintiff can demonstrate:

> that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 487. In *Heck*, the Supreme Court decided that because an element of a malicious prosecution claim is the termination of the underlying criminal proceeding in favor of the accused, such claim was not cognizable as a § 1983 claim before such termination occurred. *Heck*, 512 U.S. at 484. The Supreme Court based this decision on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck*, 512 U.S. at 486.

In *Wallace,* the Supreme Court explained that the *Heck* bar:

> is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment.   It delays what would

---

[4] "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Heck*, 512 U.S. at 482 (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973)).

12

> otherwise be the accrual date of a tort action until the
> setting aside *of an extant conviction* which success in that
> tort action would impugn.

*Wallace*, 127 S. Ct. at 1097-98 (internal quotations omitted).  In other words, the *Heck*

bar only applies if, at the time that a § 1983 claim would normally accrue, there is an

extant underlying conviction or sentence that has not been invalidated.[5]  *See Elozua v.*

*New Jersey*, No. 04-2029(MLC), 2008 U.S. Dist. LEXIS 9762, at *4 (D.N.J. Feb. 11,

2008), *appeal docketed*, No. 08-1725 (3d Cir. Mar. 10, 2008) (holding that "if a plaintiff

is not convicted at the time a Section 1983 claim accrues, the accrual of the claim is not

deferred, and that plaintiff must file the claim within the applicable statute of limitations

period.")

In *Wallace*, the Supreme Court refused to extend the *Heck* bar to a § 1983 claim

for false arrest, and it held that "the statute of limitations upon a § 1983 claim seeking

damages for a false arrest in violation of the Fourth Amendment, where the arrest is

followed by criminal proceedings, begins to run at the time the claimant becomes

detained pursuant to legal process."  *Wallace*, 127 S. Ct. at 1100.  The Supreme Court

explained that the *Heck* bar does not apply because at the time the statute of limitations

began to run on plaintiff's false arrest claim, "there was in existence no criminal

conviction that the cause of action would impugn; indeed, there may not even have been

an indictment."  *Wallace*, 127 S. Ct. at 1098.  The Supreme Court thus refused to extend

---

[5] In the case of a false imprisonment claim, "the *Heck* principle would be applied not to the date of accrual but to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process.  Even at that later time, there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment."  *Wallace*, 127 S. Ct. at 1098.

13

the *Heck* bar such "that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside."  *Wallace*, 127 S. Ct. at 1098.  The Supreme Court sought to prevent, in an action for false arrest:

> the plaintiff (and if he brings suit promptly, the court) [from having] to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict.

*Wallace*, 127 S. Ct. at 1098 (citing *Heck*, 512 U.S. at 487).  "Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose." *Wallace*, 127 S. Ct. at 1099.

### G. Hilton's § 1983 Fourth Amendment Claims for False Arrest, False Imprisonment, Illegal Search and Seizure, and Excessive Force

Although *Wallace* only directly addressed the issue of whether the *Heck* bar applied to a false arrest claim, its reasoning is equally applicable to claims for false imprisonment, illegal search and seizure, and excessive force.  *See Dominguez v. Hendley*, 545 F.3d 585, 2008 U.S. App. LEXIS 20577, at *4 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation.  Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit."); *Mallard v. Potenza*, No. 94-223(CBA), 2007 U.S. Dist. LEXIS 86336, at *8-9 (E.D.N.Y. Nov. 21,

2007) ("Plaintiff cites no authority for the proposition that *Wallace* does not apply in the context of § 1983 claim for an illegal search and seizure.  Indeed, at this relatively early stage, the only courts to consider the expansion of *Wallace* to the search and seizure context have made this rather modest leap.")

Here, as in *Wallace*, there is no *Heck* bar to accrual because when Hilton's Fourth Amendment claims accrued, there was no extant underlying conviction.  Consequently, these claims accrued, and the two-year statute of limitations began to run, on September 22, 1995, the date Hilton alleges that Trooper Kronenfeld committed the tortious acts that form the bases for these claims.  Sec. Am. Compl. at ¶¶ 49-56, 67-82.  Hilton first sustained the alleged damages upon the stop, search and seizure, and force used at the traffic stop.  He knew—or should have known—that he had a cause of action for false arrest, false imprisonment, illegal search and seizure, and excessive force at that point.[6] This is so even though Hilton may not have known of the full extent of his injury or that Trooper Kronenfeld's actions constituted a legal wrong.  *See Oshiver*, 38 F.3d at 1386.

Hilton does not qualify for New Jersey statutory tolling based on minority status, insanity, or non-residency of the persons liable.  Hilton has not alleged, and there is nothing in the record to suggest, that Defendants induced or tricked him into believing that he had no claim or that the filing deadline had passed or that he was prevented from asserting his rights.  Nor did Hilton file a defective pleading within the statute of limitations period or file a pleading in the wrong forum.  Thus, there is no justification for

---

[6] Hilton bases his false imprisonment claim only on his allegedly unlawful detention at the time of the traffic stop.

equitable tolling under New Jersey or federal law, and Hilton's Fourth Amendment false arrest, false imprisonment, illegal search and seizure, and excessive force claims were time barred when he filed the Complaint on December 29, 2004.  Accordingly, these claims are dismissed with prejudice.

This Court agrees with other Courts in this District that *Wallace* supersedes the Third Circuit's analysis in *Gibson v. Superintendent of N.J. Dep't. of Law & Pub. Safety-Division of State Police*, 411 F.3d 427 (3d Cir. 2005) of § 1983 claims for Fourth Amendment violations.  *See Kirkland v. Morgievich*, No. 04-1651(SDW), slip op. at ___ (D.N.J. Dec. 15, 2008).

### H.  Hilton's § 1983 Fourteenth Amendment Claim for Selective Enforcement

The analysis in *Wallace* instructs that the *Heck* bar does not apply to a § 1983 Fourteenth Amendment selective enforcement claim based on racial profiling. Consequently, the claim accrues, and the statute of limitations begins to run, at the time of the stop, search and seizure made pursuant to the selective enforcement of the law.[7] The *Heck* bar does not apply because at the time the selective enforcement claim accrues, there is no extant underlying criminal conviction that such claim would impugn.  As such, the claim would not "necessarily imply the invalidity" of an underlying conviction or sentence.  *See Heck*, 512 U.S. at 486-87.  Thus, there is no basis to deviate from the traditional rule of accrual, pursuant to which a selective enforcement claim based on racial profiling would accrue when the plaintiff first sustains damages: upon the stop,

---

[7] Notably, in analyzing *Heck*, the *Freeman* Court made no distinction between a motor vehicle stop based on racial profiling and a stop or search made without probable cause.  *Freeman*, 347 N.J. Super. at 25 n.3.

search and seizure.  Accrual at the time of the stop, search and seizure avoids speculation by the plaintiff and potentially the court about whether a prosecution will be brought, whether it will result in a conviction, and whether the pending civil action will impugn that verdict.  *See Wallace*, 127 S. Ct. at 1098.  Accrual occurs at this point even though the plaintiff might not know of the full extent of his injury or that the injury constitutes a legal wrong.  *Oshiver*, 38 F.3d at 1386.

Accordingly, Hilton's selective enforcement claim accrued, and the two-year statute of limitations began to run, on September 22, 1995.  There is no *Heck* bar to accrual because when the alleged selective enforcement claim accrued, there was no extant underlying conviction.  Hilton's allegations of racial profiling are limited to the September 22, 1995 traffic stop and the accompanying search and seizure.[8]  Sec. Am. Compl. at ¶¶ 67-82.  Hilton first sustained the alleged damages upon the stop, search and seizure.  Hilton knew—or should have known—that he had a cause of action for selective enforcement at that point.  This is true even though Hilton may not have known of the full extent of his injury or that Trooper Kronenfeld's actions constituted unlawful racial profiling.  *See Oshiver*, 38 F.3d at 1386.

For the reasons stated above, Hilton does not qualify for New Jersey statutory tolling, and he is not entitled to equitable tolling under New Jersey or federal law.  Contrary to Hilton's assertion, concealment of the pervasiveness of racial profiling does not justify tolling of the statute of limitations for his selective enforcement claim.[9]  That

---

[8] Hilton alleges selective enforcement only in the alleged racial profiling leading to the September 22, 1995 traffic stop and accompanying search and seizure.

[9] *See Freeman*, 347 N.J. Super. at 31-32 (rejecting plaintiff's argument for

being said, if this Court equitably tolled the statute of limitations for such claim because of the concealment of the practice of racial profiling, this claim is still time barred. Assuming that Hilton was not aware on September 22, 1995 that the traffic stop and ensuing search and seizure were motivated by racial profiling, he was indeed aware of it on June 3, 1996.   On that date, Hilton's counsel—with Hilton present—argued that evidence seized as a result of the unlawful stop should be suppressed because Hilton was the victim of racial profiling on September 22, 1995.  In arguing the motion to suppress, Hilton's attorney relied in part on *State v. Soto*, 324 N.J. Super. 66, 84 (Law Div. 1996), in which the Court found that the New Jersey State Police endorsed a policy of racial profiling.  Thus, any equitable tolling period, if it were to be applied, would have expired on June 3, 1996, and Hilton would have had to file his claim by June 3, 1998. Accordingly, Hilton's Fourteenth Amendment selective enforcement claim was time barred when he filed the Complaint on December 29, 2004 and, as such, this claim is dismissed with prejudice.

Most Courts in this District agree that a selective enforcement claim based on racial profiling accrues upon the stop, search and seizure made pursuant to the selective enforcement of the law.  *See Dique v. Mulvey*, No. 04-563(KSH), 2008 U.S. Dist. LEXIS 33683, at *23 (D.N.J. Apr. 23, 2008), *appeal docketed*, No. 08-2525 (3d Cir. May 19,

---

equitable tolling based on the lengthy concealment of racial profiling because plaintiffs have a duty to diligently pursue their claims and it is not necessary for plaintiffs to know the full extent of their injury in order to have a cause of action.  The Court found significant that New Jersey State Police's racial profiling first came to light in 1991 in *State v. Kennedy*, 247 N.J. Super. 21 (App. Div. 1991)).  *But see Dique v. Mulvey*, No. 04-563(KSH), 2008 U.S. Dist. LEXIS 33683, at *23 (D.N.J. Apr. 23, 2008) (applying equitable tolling to selective enforcement claim based on racial profiling).

2008) (finding that selective enforcement claim accrued on the date of the search and arrest but that equitable tolling should apply); *Elozua*, 2008 U.S. Dist. LEXIS 9762, at *21 (finding that the Fourteenth Amendment selective enforcement claim accrued on date of stop, search and arrest); *Clarke v. N.J. State Police*, No. 03-3240(SRC), 2007 U.S. Dist LEXIS 93573, at *21-22 (D.N.J. Dec. 20, 2007) (finding that the tort action for selective enforcement accrues upon the search and arrest that was allegedly made pursuant to selective enforcement of the law); *Richards v. County of Morris*, No. 07-1995(WJM), 2007 U.S. Dist. LEXIS 49290, at *15-16 (D.N.J. July 5, 2007) (finding that a claim for racial profiling in violation of the Fourteenth Amendment accrued on the date of the unlawful search and arrest). *But see Gibson v. Superint. of N.J. Dep't of Law & Pub. Safety*, No. 02-5470(RBK), 2008 U.S. Dist. LEXIS 8713, at *9-10 (D.N.J. Feb. 5, 2008) (finding that the statute of limitations for a selective enforcement claim did not begin to run until the underlying sentence was vacated).  The Third Circuit recently issued an opinion in which it held that "*Heck*'s deferred accrual rule applies to allegations of a violation of equal protection, because a successful claim of racially discriminatory enforcement of the law would invalidate the resulting conviction and sentence."  *Cook v. Layton*, No. 08-2156, slip op. at 3 (3d Cir. Nov. 19, 2008) (citing *Gibson v. Superintendent*, 411 F.3d 427, 435, 441 (3d Cir. 2005)).  The opinion, which is labeled "Not Precedential," does not mention *Wallace* or contain any discussion of that decision's impact on *Heck* or *Gibson*.  Without further direction from the Third Circuit, this Court must be guided by the Supreme Court's holding in *Wallace*.

19

## I.   42 U.S.C. § 1985(3)

Section 1985(3)[10] of Title 42 of the United States Code provides, in pertinent part:

> If two or more persons in any State or Territory conspire [. .
> .] for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the
> laws, or of equal privileges and immunities under the laws
> [. . .] in any case of conspiracy set forth in this section, if
> one or more persons engaged therein do, or cause to be
> done, any act in furtherance of the object of such
> conspiracy, whereby another is injured in his person or
> property, or deprived of having and exercising any right or
> privilege of a citizen of the United States, the party so
> injured or deprived may have an action for the recovery of
> damages, occasioned by such injury or deprivation, against
> any one or more of the conspirators.

42 U.S.C. § 1985(3).  In order to state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based
> discriminatory animus designed to deprive, directly or
> indirectly, any person or class of persons to the equal
> protection of the laws; (3) an act in furtherance of the
> conspiracy; and (4) an injury to person or property or the
> deprivation of any right or privilege of a citizen of the
> United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Brotherhood of*

*Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).

Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps

---

[10] While Hilton does not specify which subsection of § 1985 he alleges
Defendants violated, the Court infers from Count Six that his § 1985 claim rests on
subsection 3.

otherwise class based, invidiously discriminatory animus."  *Lake*, 112 F.3d at 685 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

A § 1985 claim accrues when the plaintiff knew or should have known of the alleged conspiracy.  *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)).  The applicable state's personal injury statute of limitations that governs a § 1983 claim also governs a § 1985 claim.  *Bougher*, 882 F.2d at 79.  Thus, a § 1985 claim arising in New Jersey has a two-year statute of limitations.  N.J. Stat. Ann. § 2A:14-2; *Cito v. Bridgewater Twp. Police Dept*, 892 F.2d 23, 25 (3d Cir. 1989).  The statute of limitations for a § 1985 conspiracy claim runs from each overt act causing damage to the plaintiff.  *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984).

> Count Six of Hilton's Second Amended Complaint alleges, in pertinent part:
>
>> Defendants . . . Williams . . . and Kronenfeld conspired with members of the defendant New Jersey State Police to conceal the existence of racial profiling from the judiciary and the Department of Justice.
>> . . .
>> This concealment led to the deprivation of plaintiff's civil rights by causing him to become a victim of racial profiling, the State Police's selective enforcement of traffic law, unreasonable search and seizure, and the use of excessive force without probable cause in unlawful deprivation of his rights secured, guaranteed and protected by federal law.

(Sec. Am. Compl., Count Six, ¶¶ 130, 132.)  The only overt acts alleged to have caused Hilton damage pursuant to § 1985 are racial profiling, selective enforcement of the traffic law, unlawful search and seizure, and excessive force.  As stated above, Trooper

Kronenfeld committed these acts on September 22, 1995.  As such, the statute of limitations for Hilton's § 1985 race-based conspiracy claim expired on September 22, 1997.  Thus, this claim is time barred and dismissed with prejudice.

### J.  42 U.S.C. § 1986

Section 1986 of Title 42 of the United States Code provides, in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

42 U.S.C. § 1986.  Section 1986 does not create an independent cause of action.  *Lee-Patterson v. N.J. Transit Bus Operations, Inc.*, 957 F. Supp. 1391, 1403 (D.N.J. 1997) (citing *Black v. Bayer*, 672 F.2d 309, 312-13 n.4 (3d Cir. 1982)).  Because § 1986 claims are derived from § 1985 claims, if a plaintiff fails to state a § 1985 claim, his § 1986 claim also fails.  *Lee-Patterson*, 957 F. Supp. at 1403.  The statute of limitations for a § 1986 claim is one year.  42 U.S.C. § 1986.

Here, Hilton's § 1986 claim is dismissed with prejudice for two reasons.  First, because Hilton's § 1985 claim is dismissed, and such claim forms the basis for his § 1986 claim, his § 1986 claim must also be dismissed.  Second, for the reasons stated above concerning the untimeliness of Hilton's § 1985 claim, his § 1986 claim is untimely as

well.

### K.  Malicious Prosecution Under § 1983 and New Jersey Law

To establish a claim for malicious prosecution under § 1983, a plaintiff must demonstrate the following elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Wilson v. N.J. State Police*, No. 04-1523(MLC), 2006 U.S. Dist. LEXIS 60514, at *27-28 (D.N.J. Aug. 15, 2006) (quoting *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).   The first four elements comprise malicious prosecution under New Jersey common law.  *Wilson*, 2006 U.S. Dist. LEXIS 60514, at *28 (citing *Wiltz v. Middlesex County Office of the Prosecutor*, No. 05-3915(DMC), 2006 U.S. Dist. LEXIS 46821, *9 (D.N.J. July 10, 2006)).   Failure to prove any element is a basis to deny a malicious prosecution claim.  *Wilson*, 2006 U.S. Dist. LEXIS 60514, at *28 (citing *Wiltz*, 2006 U.S. Dist. LEXIS 46821, at *9).

### i.  Favorable Termination

The second element of malicious prosecution, favorable termination, is established when the plaintiff is "innocent of the crime charged in the underlying prosecution." *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000); *see also Freeman*, 347 N.J. Super. at 27 ("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were

charged.") (citing *Rubin v. Nowak*, 248 N.J. Super. 80, 83 (App. Div. 1991)).  A conviction vacated because of colorable issues of racial profiling does not establish that the plaintiff is innocent of the crime charged in the underlying prosecution.  *Ramsey v. Dintino*, No. 05-5492(JAG), 2007 U.S. Dist. LEXIS 23517, at *33 (D.N.J. Mar. 30, 2007) (finding that where plaintiff's conviction was vacated because there were colorable issues of racial profiling and not because he had established his innocence he had failed to show favorable termination of criminal proceedings); *Dorsett v. N.J. State Police*, No. 04-5652(WJM), 2007 U.S. Dist. LEXIS 10512, at *16-17 (D.N.J. Feb. 15, 2007) (finding that a conviction overturned due to colorable issues of racial profiling did not establish that plaintiff was innocent of the crime charged in the underlying prosecution); *Wilson v. N.J. State Police*, No. 04-1523(MLC), 2006 U.S. Dist. LEXIS 60514, at *29-30 (D.N.J. Aug. 15, 2006) (a conviction vacated for colorable issues of racial profiling does not establish favorable termination in a malicious prosecution claim); *Lane v. Whitman*, No. 02-4290(JCL), 2004 U.S. Dist. LEXIS 29983, at *17-18 (D.N.J. Feb. 18, 2004) (finding that vacation of a conviction for colorable issues of racial profiling does not establish that plaintiff was innocent of the criminal charges).

Here, Hilton did not receive a favorable termination of his criminal proceeding because he is not innocent of possession with intent to distribute a controlled dangerous substance.  Hilton pleaded guilty to such crime, and he testified that he is indeed guilty. Hilton's indictment was dismissed and conviction vacated for colorable issues of racial profiling, which does not establish that he is innocent of the crime.  In granting the State's motion, Judge Ahto did not find Hilton innocent of the crime, and there is no

evidence that Hilton is innocent of the crime.   Accordingly, Hilton's malicious prosecution claims under § 1983 and New Jersey law are dismissed with prejudice.

Hilton argues erroneously that *Rubin* supports his contention that he received a favorable termination of his criminal proceedings.   In *Rubin*, the Appellate Division found that an administrative dismissal of charges, prior to presentation to the grand jury, was a favorable termination of a criminal proceeding for purposes of a malicious prosecution claim.   *Rubin*, 248 N.J. Super. at 84.   The Court determined that there was "nothing in the record to suggest that the prosecutor [dismissed the charges] for any reason other than a careful determination of plaintiff's innocence."   *Rubin*, 248 N.J. Super. at 84.   The Court explained that a favorable termination inquiry should focus on "whether the termination was or was not dispositive as to the accused's innocence of the crime for which he was charged."   *Rubin*, 248 N.J. Super. at 83.   *Rubin* is distinguishable from the instant case because there is nothing in the record to suggest that Hilton is innocent of the crime of possession with intent to distribute a controlled dangerous substance.

Notwithstanding the fact that Hilton's malicious prosecution claims under § 1983 and New Jersey law are dismissed with prejudice because he cannot establish a favorable termination of his criminal proceedings, the Court will address the third element of malicious prosecution.

### ii.  Probable Cause

The third element of malicious prosecution is established when the criminal proceeding is initiated without probable cause. *Montgomery*, 159 F.3d at 124.  "Probable

cause is established conclusively by a conviction, even if reversed on appeal, so long as the conviction was not obtained by fraud, perjury or other corrupt means." *Freeman*, 347 N.J. Super. at 26 (quoting *Lind v. Schmid*, 67 N.J. 255, 263-64 (1975) (internal quotations omitted)).  A victim of an illegal search and seizure "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (citing John C. Jeffries, Jr., Damages for Constitutional Violations: The Relation of Risk to Injury in Constitutional Torts, 75 Va. L. Rev. 1461, 1475 (1989)).

Here, assuming *arguendo* that Trooper Kronenfeld lacked probable cause to stop and search Hilton and the vehicle, there was probable cause to prosecute Hilton because he possessed a controlled dangerous substance as evidenced by his guilty plea.  There is no evidence that such substance was planted or fraudulently produced by the State of New Jersey or that Hilton entered a guilty plea as a result of perjury, fraud or corruption. Thus, Hilton cannot establish that his criminal proceeding was initiated without probable cause, and his malicious prosecution claims under § 1983 and New Jersey law are dismissed with prejudice.[11]

**IV.  Conclusion**

For the foregoing reasons, the Motion for Reconsideration is denied and the Motion for Summary Judgment is granted.  Hilton's claims are dismissed with prejudice, and the Second Amended Complaint is dismissed in its entirety.  Because Hilton has not

---

[11] Because the malicious prosecution claims under § 1983 and New Jersey law are dismissed for Hilton's failure to establish two elements, the Court need not address the remaining elements.

prevailed in his §§ 1983, 1985 or 1986 claims, he is not entitled to the payment of his attorney's fees or costs under 42 U.S.C. § 1988.  An Order follows.

**S/SUSAN D. WIGENTON, U.S.D.J.**

cc: Judge Madeline Cox Arleo, U.S.M.J.

27